# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JEFFREY McFARLAND, )
      )
    Plaintiff, )
      )
vs. )   Case No. CIV-16-449-F
      )
NANCY A. BERRYHILL, acting )
Commissioner Social Security )
Administration[1], )
      )
    Defendant. )

## REPORT AND RECOMMENDATION

Jeffrey McFarland (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 3.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security act, 42 U.S.C. § 405(g).

After a careful review of the record, the parties' briefs, and the relevant authority, the undersigned recommends an entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met his burden of proof. AR 10-28; *see* 20 C.F.R. § 404.1520(a)(2); *see also Wall v.* Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had severe "neck and back pain, degenerative joint disease in the knees, aortic aneurysm status post rupture and surgical repair with sternal thoracotomy (December 2008), hypertension, depression, anxiety and history of polysubstance abuse";

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] (RFC) for light work that required him to stoop and interact with the general public in the workplace only occasionally, and to perform "some simple and some complex tasks" with routine supervision;

(4) could not perform any past relevant work;

(5) was able to perform jobs existing in the national economy; and so,

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

(6) had not been under a disability, as defined in the Social Security Act, from April 12, 2010—his alleged onset of disability date—through July 29, 2014, the date of the ALJ's decision.

AR 10-28.

## 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision. *Id.* at 1-3; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). As the Tenth Circuit has cautioned, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

### B. Issues for judicial review.

Plaintiff fully developed two issues for this Court's review. The first issue is whether the ALJ committed reversible error in providing an RFC opinion regarding Plaintiff's ability to perform simple and some complex work tasks that was inconsistent with his hypothetical question to the vocational

4

expert (VE). Doc. 14, at 2-6. The second issue for review is whether the ALJ committed reversible error by failing to include a limitation in Plaintiff's RFC based on his "syncope," or passing out, caused by his severe aortic aneurysm status post rupture and surgical repair with sternal thoracotomy. *Id.* at 6-8.[3]

Plaintiff also includes several complaints that are too undeveloped or non-specific to undergo analysis. For example, Plaintiff writes:

> Next, is a 'moderate limitation in interacting with the general public' the same as 'occasionally interact with the general public in the workplace?' These are also completely different RFC terms for determining public interaction on the job. But, the bigger question is how did the VE perceive the question and would he have answered differently and given different jobs had he been asked the RFC in the decision?

*Id.* at 5.

Plaintiff's RFC states he could "occasionally interact with the general public in the workplace," and the ALJ questioned the VE about a hypothetical individual who "can only occasionally interact with the general public in the workplace." AR 15, 68. The undersigned sees no obvious inconsistency and, reading Plaintiff's inadequately framed argument, cannot ascertain what alleged error Plaintiff believes occurred.

---

[3] The Commissioner believes Plaintiff also raises a claim that "the ALJ should have done more to assess his past relevant work," citing Plaintiff's opening brief at pages 4-5. Doc. 22, at 9. The undersigned sees no such argument.

5

Next, Plaintiff repeats the RFC and then writes: "It is more than a non-sequitur that a man with severely degenerated knees should be standing all day in light work." Doc. 14, at 5. And, elsewhere, Plaintiff explains "the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three" (relying on Fourth Circuit case law). Plaintiff then adds: "Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC." *Id.* at 7.

Plaintiff does not allege the ALJ failed to discuss the impairments or that he ignored any medical evidence relating to the impairments. And Plaintiff makes no attempt to explain why limitations to only occasional stooping and only occasional interaction with the general public fail to adequately account for the impairments. In sum, Plaintiff failed to sufficiently develop these arguments for review.

It is not the court's duty to dissect Plaintiff's statements looking for substantive allegations and the undersigned does not address these under-developed arguments. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding inadequately framed or developed "perfunctory complaints" are insufficient to invoke review); *see also Kirkpatrick v. Colvin*, __ F. App'x __, 2016 WL 5920745, at *2 (10th Cir. 2016) (rejecting plaintiff's argument in part because he "doesn't explain how these [RFC] restrictions fail to account for his

6

depth-perception and peripheral-vision deficits" and stating "it isn't our obligation to search the record and construct a party's arguments"); *Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (holding that the court will consider waived all "unspecific, undeveloped, and unsupported" arguments).

    **C. Whether the ALJ's RFC opinion was inconsistent with his question to the VE regarding Plaintiff's ability to perform simply and some complex work tasks.**

        **1. Plaintiff's arguments.**

The ALJ asked the VE to consider whether a hypothetical claimant, limited to light work with only occasional stooping and occasional contact with the general public, and who was limited to "simple and some complex tasks with routine supervision," could perform work in the national economy. AR 68-69. The VE answered in the affirmative. *Id.* at 69. In his opinion, the ALJ wrote Plaintiff's RFC as limiting him to "*some* simple and some complex tasks with routine supervision." *Id.* at 15. Plaintiff alleges the inconsistency between "simple jobs" in the VE hypothetical and "*some* simple jobs" in the RFC requires reversal because the court cannot know if "the ALJ change[d] his mind about how many simple jobs [Plaintiff] could perform after the hearing . . . ." Doc. 14, at 3.

        **2. Analysis of Plaintiff's claim of error.**

The Commissioner labels the apparent inconsistency in the ALJ's opinion as harmless scrivener's error. Doc. 22, at 6-7. The undersigned agrees.

7

For the sake of argument, the undersigned adopts Plaintiff's logic—i.e., that if a person can perform only *some* simple work, he cannot perform *all* simple work, and if a person cannot perform *all* simple work, he can perform no complex or detailed work.[4] Doc. 14, at 4. With this logic, the ALJ's reference to "*some* simple" work is an obvious scrivener's error.

For example, on February 8, 2011, Dr. Robert R. Waller conducted Plaintiff's psychological evaluation. AR 939-42. Dr. Waller opined Plaintiff's "thought processes were properly organized and integrated" and his "cognitive intellectual functioning" was "within the average range" with no noted deficits in "attentional capabilities" or "language communication skills." *Id.* at 941. Dr. Waller also found Plaintiff "displayed no deficits in numerical reasoning/calculation ability" and his "presentation of all information was logical, coherent, and appropriate detailed." *Id.* Finally, Dr. Waller found that Plaintiff's "[c]omprehension was appropriate for routine, verbally presented material, and outside of over elaboration, he experienced no difficulty engaging in normal conversation." *Id.* Dr. Waller believed Plaintiff was "capable of

---

[4] Plaintiff bases his argument on an opinion from his VE, attached as evidence to his brief in support. Doc. 14, at 4 & Ex. 1. In part, the Commissioner challenges Plaintiff's reliance on this outside evidence. Doc. 22, at 8-9 & n.2. The court need not address the Commissioner's concern, for even with the adoption of Plaintiff's logic, reversal is not warranted.

handling his own finances responsibly." *Id.* at 942. The ALJ thoroughly discussed Dr. Waller's opinion. *Id.* at 21-23.

Then, in March 2011, Dr. Phillip Massad, a State-agency psychologist, reviewed Plaintiff's records and opined he had "sufficient concentration and memory to do simple, repetitive tasks and some complex tasks . . . ." *Id.* at 945. Indeed, Dr. Massad opined Plaintiff "appears to be independently functional on a daily basis" and that his "[l]imitations are due to physical rather than mental conditions." *Id.* at 959. The ALJ gave Dr. Massad's opinion great weight and Plaintiff does not challenge that decision. *See id.* at 25.

Further, the ALJ issued an earlier opinion in which he opined Plaintiff could perform "simple and some complex tasks," *id.* at 86,[5] and held an earlier hearing, wherein he asked the VE about a hypothetical claimant limited to "simple and some complex tasks." *Id.* at 55-56.

The ALJ's decision and questions clearly demonstrate he believed Plaintiff could perform only "simple and some complex" work tasks and the evidence substantially supports that conclusion. Applying common sense, the ALJ would have had no reason to then intentionally contradict himself by finding Plaintiff could perform only "*some* simple and some complex tasks." For this reason, the undersigned finds it apparent that the ALJ's use of the

---

[5] The Appeals Council remanded that decision back to the ALJ, which resulted in the 2014 opinion at issue here. AR 99-101.

9

word "some" to describe Plaintiff's limitation to simple work is merely a harmless scrivener's error. *See Allen v. Colvin*, __ F. App'x __, 2016 WL 5416358, at *2 (10th Cir. 2016) (affirming the district court's refusal to remand where "the ALJ's opinion appears to suffer a typographical error, rather than an analytical error." (citation and internal quotation marks omitted)); *Lopez v. Astrue*, 371 F. App'x 887, 888 n.1 (10th Cir. 2010) (relying on the ALJ's other findings and hypothetical question to find his reference to "sedentary" rather than "light" work in the RFC was "likely 'a typographical error'" (citation omitted)).

### D. Whether the ALJ committed reversible error in incorporating no limitations in Plaintiff's RFC due to his syncope.

#### 1. Plaintiff's arguments.

The ALJ found Plaintiff had severe aortic aneurysm status post rupture and surgical repair with sternal thoracotomy. In Plaintiff's first hearing, the ALJ asked the VE: "Assume hypothetically that I find the claimant's testimony completely credible, and the impairments alleged are supported by the medical evidence. Would there be any jobs that such a person could perform?" AR 56. The VE answered in the negative, and in relevant part testified: "I base that on his testimony . . . that he passes out with exertion due to his ruptured aorta." *Id.* Based on this exchange, Plaintiff alleges the ALJ "failed to include any limitations related to the [severe aortic aneurysm status

post rupture and surgical repair with sternal thoracotomy] in the [Plaintiff's] RFC[,]. Doc. 14, at 6. He argues "the ALJ should explain how the claimant's unchallenged evidence related to his problems with syncope, translates to the ability to work unhindered all day long." *Id.* at 7. Plaintiff cites the record at pages 353 and 837-38 for his "unchallenged evidence" of syncope. *Id.* at 6, 7.

### 2. Analysis of Plaintiff's claim of error.

Plaintiff's cited evidence he experiences syncope—or fainting[6]—comprises two medical notes. The first, dated September 2004, does not mention syncope; instead, it notes that Plaintiff presented to the Bill Willis Community Mental Health and Substance Abuse Center with "daily" "alcohol abuse" "resulting in blackouts." AR 353.

Plaintiff was diagnosed with syncope in March 2009. *Id.* at 837-38. There, Dr. Daniel Molina recommended continued medication use and a referral to a cardiologist. *Id.* Plaintiff cites no further medical evidence of syncope, and the undersigned will not search the 1271-page record for it. *See Razo v. Colvin*, __ F. App'x __, 2016 WL 6134809, at *5 (10th Cir. 2016) (noting the plaintiff failed to "substantiate his claim with the medical records" and holding: "We decline to search the voluminous administrative record to

---

[6] *See* https://www.merriam-webster.com/dictionary/syncope (defining syncope as a "loss of consciousness resulting from insufficient blood flow to the brain"; "faint").

11

ascertain how many appointments each week Mr. Razo could be expected to attend.").

With that, the undersigned notes Plaintiff's only recorded episode of syncope was in March 2009—a full year before his alleged onset date. AR 837-38. The ALJ discussed this evidence. *Id.* at 18. And, while Plaintiff testified that he had passed out "numerous times just by going up a flight of stairs," *id.* at 47, the ALJ also found Plaintiff's testimony "not entirely credible." *Id.* at 16. Plaintiff does not challenge that finding. Finally, three years *after* Plaintiff's only syncope diagnosis, Dr. Luther Woodcock, a State-agency physician, opined that based on all the medical records, Plaintiff could perform "light" work. *Id.* at 962. The ALJ gave Dr. Woodcock's opinion great weight, and again, Plaintiff does not challenge that finding. *See id.* at 25-26.

The RFC need include only such limitations as the medical record substantially supports. *See Kirkpatrick*, 2016 WL 5920745, at *3 ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim that a limitation should have been included in his RFC because "such a limitation has no support in the record"). Further, Plaintiff identifies no evidence which the ALJ ignored, he identifies no specific limitations he believes the ALJ should have included in the RFC, and he fails to explain how Plaintiff's limitation to light work with only occasional stooping fails to account

for his severe limitations. Such circumstances do not warrant reversal. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [his severe impairments], the claimant has shown no error by the ALJ because [he] does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)).

### III. Recommendation and notice of right to object.

The undersigned recommends an entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by February 27, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 6th day of February, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE